UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN MORTGAGE & EQUITY CONSULTANTS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-492-RP |
| ARIEN BOWERSOCK and THE HOME LOAN EXPERT, | § § § § | *Consolidated with*: 1:19-CV-432-RP |
| Defendants. | § § § | |

## ORDER

Before the Court is Plaintiff American Mortgage & Equity Consultants, Inc.'s ("AMEC") motion for entry of a temporary restraining order and preliminary injunction, (Dkt. 8), and responsive briefing from Defendants Arien Bowersock ("Bowersock") and The Home Loan Expert (collectively, "Defendants"), (Dkt. 13). On May 16, 2019, the parties participated in a hearing on AMEC's motion. The hearing was continued on May 23, 2019. After considering the motion, the supporting evidence, and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

AMEC is a full service mortgage lender incorporated in Minnesota, where it also has its headquarters and principal place of business. (Compl., Dkt. 1, at ¶ 1). Bowersock is a Texas resident who was employed by AMEC as a Loan Officer in its Austin office. (*Id.* ¶ 2). Bowersock serviced AMEC customers throughout the Austin area. (*Id.*). The Home Loan Expert is another full service mortgage lender, incorporated in Missouri and with its headquarters and principle place of business there. (*Id.* ¶ 3). Bowersock now works for The Home Loan Expert out of its Austin office. (*Id.* ¶ 2).

AMEC alleges that on the morning of March 8, 2019, Bowersock suddenly resigned. (*Id.* ¶ 11). When her coworkers began to arrive at the office that morning, they found that the locks on

1

the doors had been changed. According to AMEC, Bowersock had hired a locksmith to change the locks while she "hijacked" the office. (*Id.*). With her coworkers locked out, Bowersock "downloaded and took her AMEC Outlook email database and customer and vendor contact information, and other stored customer information" including dozens of hard copy files. (*Id.*). AMEC further alleges that for weeks prior to her resignation, Bowersock had been transitioning business over to The Home Loan Expert. She had allegedly (1) told her assistant that she was already transferring AMEC customer loan information to The Home Loan Expert; (2) used her AMEC email and computer to conduct business for The Home Loan Expert; (3) consulted with an IT expert about how to take information from AMEC's computer databases undetected; (4) forwarded information about AMEC customers and their loans from her AMEC email address to her personal email address; (5) set up a Dropbox in violation of AMEC policy to store information about the AMEC customers with whom she worked; (6) marked files in the Dropbox as "HLE" for The Home Loan Expert and provided The Home Loan Expert with access to those files; and (7) intentionally delayed completing pending loans so that she could close them for The Home Loan Expert. (*Id.*). Bowersock also allegedly solicited an AMEC support staff member to leave AMEC to work for Defendants. (*Id.* ¶ 13; Schneider Decl., Dkt. 8-1, ¶ 7). According to AMEC, the information taken by Bowersock is all that was needed for The Home Loan Expert to "set up shop" in Austin and start competing with AMEC. (*Id.* ¶ 12).

On the basis of these allegations, AMEC asserts causes of action against Defendants for (1) breach of contract; (2) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"); (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (4) breach of fiduciary duty; (5) tortious interference with a contact; (6) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. &

Rem. Code §§ 134A.001 *et seq.* ("TUTSA"); (7) civil conspiracy; (8) unjust enrichment; and (9) conversion. (*Id.* at 10–18).

A week after filing its complaint, AMEC filed the instant motion for a temporary restraining order ("TRO").[1] (Mot., Dkt. 3, at 2–4). AMEC bases its request for a TRO on its breach of contract, misappropriation of trade secrets, and tortious interference claims. (Mot., Dkt. 8, at 2–7).

## II. LEGAL STANDARD

The party moving for a TRO must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [TRO] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "A [TRO] is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks). Upon reviewing AMEC's motion, the Court concludes that AMEC has failed to demonstrate (1) a substantial likelihood that it will prevail on the merits of its breach of contract claims or (2) that irreparable harm will likely result if an injunction is not granted on the basis of its trade secret claims. AMEC's tortious interference claims are preempted by the TUTSA, or alternatively, waived and abandoned. Accordingly, AMEC has failed to show that it is entitled to the extraordinary relief of a temporary restraining order with respect to any of the claims on which it bases its request for such relief.

---

[1] AMEC filed a motion for a TRO the same day it filed its complaint in this lead case, but the Court denied that motion because it exceeded the page limits set forth in the Local Rules and AMEC did not move for leave to exceed those page limits. (Order Denying TRO, Dkt. 7). Additionally, AMEC moved for a TRO in the consolidated case on April 18, 2019, but the Court struck that motion because AMEC's counsel is not admitted to practice in this jurisdiction, he had not submitted an application to appear *pro hac vice*, and he had failed to comply with the Clerk's instructions for filing the TRO. (Order Striking TRO, Case No. 1:19-CV-432-RP, Dkt. 14, at 1).

## III. DISCUSSION

*A. Breach of Contract*

As a condition of her employment with AMEC, Bowersock signed a Loan Officer Employment Agreement (the "Agreement"). (Compl., Dkt. 1, ¶ 5). Relevant here, the Agreement includes restrictive covenants preventing Bowersock from competing with AMEC for a 12-month period over "certain customers and loans about which she had confidential information and/or for which she was responsible at AMEC, and from using or disclosing its confidential and proprietary information." (Mot., Dkt. 8, ¶ 6; Compl., Dkt. 1, ¶¶ 5–7). The parties dispute whether the Agreement is enforceable. AMEC argues that the above limitations make the Agreement reasonable. Defendants argue that the Agreement is not reasonable because it (1) lacks a geographical limitation, (2) applies to customers with whom Bowersock never had any contact while at AMEC, and (3) contains an unreasonable non-solicitation provision. (Resp., Dkt. 13, at 4–9).[2]

In Texas, "[e]very contract . . . in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code § 15.05(a). "An agreement not to compete is in restraint of trade and therefore unenforceable . . . unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). "By statute, covenants not to compete are reasonable—and therefore enforceable—only to the extent that they contain 'limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.'" *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *5 (W.D. Tex. Jan. 30, 2019) (quoting Tex. Bus. & Com. Code § 15.50(a)). The court may "dispense[ ] with one or more" of these limitations "when the

---

[2] Defendants also argue that the Agreement is unreasonable because it precludes potential customers from initiating contact with Bowersock. (Resp., Dkt. 13, at 8–9). In Defendants' view, this result follows from the inclusion of the word "facilitate" in the clause prohibiting Bowersock from "solicit[ing], encourag[ing] or facilitat[ing] any customer or client . . . to refinance" a loan. (*Id.*; *see* Compl., Dkt. 1, ¶ 6(E)). The Court finds this interpretation of "facilitate" to be stretched and unpersuasive.

totality of circumstances indicate[ ] that the covenant not to compete [is] reasonably narrow to protect a company's business interest or goodwill." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 799 (S.D. Tex. 2010).

The lack of several limitations is relevant here. First, "[g]enerally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer." *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Because the Agreement contains no limitation as to geographic scope, Defendants argue that it purports to prevent Bowersock from working for any AMEC competitor anywhere in the country, even if that competitor is based entirely outside of Austin. That alone is likely enough to render the Agreement unreasonable. *Butler*, 51 S.W.3d at 793.

Second, the Agreement purports to prohibit Bowersock from soliciting, encouraging, or facilitating "any customer who has closed a loan with [AMEC] in the preceding 12 months, to refinance or otherwise prematurely pay-off such loans." (Compl., Dkt. 1, ¶ 6(E)). But "[c]ovenants not to compete are deemed unreasonable in scope if they prohibit contact with customers with whom the defendant had no contact while employed." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2017 U.S. Dist. LEXIS 191317, at *24 (W.D. Tex. Nov. 20, 2017); *see also John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386–88 (Tex. 1991) ("In the case of covenants applied to a personal services occupation, such as that of a salesman, a restraint on client solicitation is overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment.")). The Agreement clearly applies to such customers because it does not limit its scope to customers with whom Bowersock had contact while employed at AMEC.

5

Third, the Agreement purports to prohibit Bowersock from soliciting any AMEC employee to work for her in any capacity. (*See* Compl., Dkt. 1, ¶ 6(G)). The non-solicitation provision is not limited to hiring away employees to work in a competing business capacity; rather, it broadly prohibits Bowersock from soliciting AMEC employees "to leave the Employer or form or join another entity." (*Id.*). Thus, if Bowersock hired an AMEC employee to paint her house, she would be in violation of the Agreement. *See Brown Servs. v. Brown*, No. 01-98-00304-CV, 1999 Tex. App. LEXIS 6689, at *18 (Tex. App.—Houston [14th Dist.] Sept. 2, 1999, pet. denied) ("[I]f Mike Brown hired a Brown Services employee to paint his house, he would be in violation of the agreement. Because this clause is not limited to hiring away employees to work in a competing business, it is too overbroad.").

Taken together, the Agreement is likely unreasonable "along several dimensions." *TFC Partners*, 2019 WL 369152, at *5 (citations omitted). The Court is sensitive to AMEC's concern that, "armed with [its] pricing and other information," Defendants can target its loan customers "to refinance or otherwise interfere with completed loans." (Reply, Dkt. 17, at 5 n.3). But the time-period and other limitations in the Agreement do not cure the deficiencies discussed above, and so the Agreement is not "reasonably narrow to protect [AMEC's] business interest or goodwill." *M-I*, 733 F. Supp. 2d at 799.

Finally, the Court notes that Texas law requires it to reform unreasonable agreements. Tex. Bus. & Com. Code § 15.51(c). However, the Court may do so at the preliminary injunction stage, *Tranter, Inc. v. Liss*, No. 01-13-00167-CV, 2014 WL 1257278, at *10 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.), and AMEC has not requested reformation at this time. AMEC has also not yet presented any argument as to what might constitute a reasonable reformation. Accordingly, the Court determines AMEC's likelihood of success on the merits of its breach of contract claim on the

Agreement as written. *TFC Partners*, 2019 WL 369152, at *6.[3] Because the Court finds that the Agreement is likely unenforceable, it finds that AMEC is not entitled to temporary injunctive relief on the basis of its breach of contract claims.

## B. *Misappropriation of Trade Secrets*

AMEC also asks the Court to issue a TRO on the basis of its trade secret misappropriation claims. (Mot., Dkt. 8, at 4–7). The Court finds that a TRO is not warranted on this basis because AMEC has failed to show that Defendants' alleged misappropriation is causing it irreparable harm.

To meet its burden to show irreparable harm, a movant must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). An irreparable injury is one that "cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (citations and quotation marks omitted).

AMEC alleges that its trade secrets allegedly stolen by Defendants are: "customer lists and contact information, pricing, mortgage expiration dates, special requirements, highly sensitive loan applicant financial information such as tax returns, banking information, employment details, credit histories and unique requirements." (Reply, Dkt. 17, at 6). As an initial matter, the Court is not persuaded that all of this information qualifies as trade secrets belonging to AMEC. The "highly sensitive loan applicant financial information," for instance, does not appear to be AMEC's proprietary information. Any claim AMEC may have relating to the disclosure of such information would therefore not derive from its trade secret misappropriation causes of action.

---

[3] AMEC merely points out the rule that the court must reform unreasonable agreements and that a court may reform agreements at the preliminary injunction stage. (Mot., Dkt. 8, at 3 n.2). In light of the fact the AMEC has not presented any argument as to what would constitute a reasonable reformation, the Court does not construe AMEC's two-sentence footnote to request reformation at this time. Rather, the Court construes AMEC's footnote to state that the Court may reform the agreement at the preliminary injunction stage if it determines now at the temporary restraining order stage that the Agreement is unreasonable and therefore unenforceable.

With respect to customer lists and pricing information, mere "[c]ustomer relationships do not qualify as trade secrets," even if a company "invests time and money to cultivate those relationships." *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379, 2017 U.S. Dist. LEXIS 142618, at *41 (W.D. Tex. Sept. 5, 2017) (citing *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 230 (5th Cir. 1968) (noting that an "advantageous business relationship" between an employer and customer is not a trade secret)). Pricing information, however, may qualify as a trade secret, and Defendants conceded at the May 23 hearing that AMEC's pricing information was its trade secret. AMEC believes Defendants have used this information to "convert customers" to do business with The Home Loan Expert and will continue to do so in the future. (Reply, Dkt. 17, at 8). Futher, AMEC correctly points out that irreparable harm at this stage may be *presumed* because it has shown that Defendants possess AMEC's trade secret information and is in a position to use it. (Mot. Dkt. 8, ¶ 9 (citing *First Command Fin. Planning, Inc. v. Velez*, No. 4:16-CV-1008-O, 2017 WL 2999405, at *6 (N.D. Tex. May 8, 2017))). Even so, an irreparable injury is one that "cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Heil Trailer Int'l Co.*, 542 F. App'x at 335 (citations and quotation marks omitted). AMEC has filed with the Court a spreadsheet containing a list of customer names, loan amounts and types, and estimated dates of closing. (*See* Ex. 5, Dkt. 22-2, at 14–16). After reviewing the exhibit, and in light of the parties' arguments at the May 23 hearing, the Court believes it will be able to calculate damages deriving from the misappropriation of the trade secret information contained in the exhibit should AMEC succeed on the merits of its misappropriation claims.

In sum, with respect to the full list of information AMEC alleges are its trade secrets, the Court finds that not all information on the list is protectable as a "trade secret," and that for the subset of information on the list that is likely protectable as AMEC's trade secrets, the Court will be able to award damages for misappropriation of these trade secrets should AMEC succeed on the

merits of its misappropriation claims. The Court therefore finds that AMEC is not entitled to temporary injunctive relief with respect to these claims. Having made that finding, the Court need not address whether AMEC has met its burden with respect to the remaining TRO requirements.

## C. Tortious Interference

Finally, AMEC seeks temporary injunctive relief on the basis of its tortious interference claim. (Mot., Dkt. 8, at 7). AMEC briefs only the first TRO requirement with respect to this claim, and it offers only the general statement that "injunctive relief is appropriate for tortious interference." (Mot., Dkt. 8, at 7). AMEC has not attempted to argue why temporary injunctive relief is warranted *in this case* with respect to its tortious interference claim. Further, AMEC does not respond to Defendants' argument that AMEC's tortious interference claim is preempted by its TUTSA claim. Defendants aver that the core of AMEC's tortious interference claim is that The Home Loan Expert "entice[d]" Bowersock to disclose to it AMEC's customer lists and other purported trade secrets, and therefore it is preempted by the TUTSA. (Resp., Dkt. 13, at 13); *see Embarcardero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 U.S. Dist. LEXIS 1902, at *8 (W.D. Tex. Jan. 4, 2018) (concluding that the TUTSA preempts "all claims based on the alleged improper taking of confidential business information"). AMEC has not challenged this characterization of its tortious interference claim.

The Court finds that AMEC's tortious interference claim is preempted by the TUTSA, or alternatively, that AMEC has waived and abandoned its tortious interference claim with respect to its request for temporary injunctive relief. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (a party waives an issue if he fails to adequately brief it); *Tex. Capital Bank N.A. v. Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (a party abandons a claim when it fails to respond to a challenge to that claim). Accordingly, the Court finds that AMEC is not entitled to temporary injunctive relief with respect to its tortious interference claim.

## IV. CONCLUSION

Because AMEC has failed to make the showing necessary for this Court to enter a TRO, the Court will not enter AMEC's requested relief at this time. **IT IS THEREFORE ORDERED** that AMEC's motion, (Dkt. 8), is **DENIED**.

AMEC has styled its motion as an "Application for Temporary Restraining Order and Preliminary Injunction." (Dkt. 8). The Court will enter a separate order setting a telephone conference to discuss scheduling, preliminary discovery, and any other matters relevant to AMEC's request for a preliminary injunction.

**SIGNED** on May 24, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE